# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| RICKY L. BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  3:12-CV-0307-CAN |
| | ) | |
| CAROLYN W. COLVIN, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On October 12, 2011, Plaintiff Ricky L. Bryant ("Bryant") filed his complaint in this Court. On November 28, 2012, Bryant filed his opening brief requesting that this Court reverse and remand this matter to the Commissioner for payment of benefits, or with instructions to properly evaluate all of the evidence of record with respect to Bryant's physical impairments in a *de novo* hearing. Bryant does not specify in his opening brief whether he is seeking relief under sentence four or sentence six of 42 U.S.C. § 405(g).  Based on the content of Bryant's opening brief, the Court construes Bryant's request for relief as a request for a sentence four remand.

On March 3, 2013, Defendant Commissioner of Social Security, Carolyn W. Colvin ("Commissioner") filed her response, arguing that Bryant should not receive relief under either sentence four or sentence six.  On April 3, 2013, Plaintiff filed a reply brief and a Motion for Sentence Six Remand to Consider New and Material Evidence, in which Bryant clearly sought relief under sentence six.  The Commissioner did not file a response to this motion.  This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## I.      PROCEDURAL BACKGROUND

On March 13, 2008, Bryant filed an application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 416(i), 423(d), and 1382c(a)(3)(A), alleging a disability due to his Chronic Pulmonary Insufficiency ("COPD"), emphysema, Barrett's esophagus, chronic bronchitis, and history of knee replacement surgery.  Bryant alleged an onset date of June 2, 2006.  Bryant's application was denied initially on June 16, 2008, and subsequently upon reconsideration on August 13, 2008.  Plaintiff filed a timely request for a hearing, which was held before an Administrative Law Judge ("ALJ") on February 18, 2010.  Bryant, his wife, his attorney, and the Vocational Expert ("VE") appeared at the hearing.

On January 7, 2011, the ALJ issued a decision denying Plaintiff's application.  The ALJ found that Bryant had not engaged in substantial gainful activity since June 2, 2006, the alleged onset date.  The ALJ also found that Bryant's severe impairments included Barrett's esophagus, obesity, COPD, mild to moderate degenerative disc disease of the spine, which required surgery on October 26, 2006, and a total right knee replacement in March 2010.  However, the ALJ found that Bryant failed to establish with reliable evidence that he had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, namely major dysfunction of a joint, reconstructive surgery of a major weight bearing joint, disorders of the spine, chronic pulmonary insufficiency, and asthma.  The ALJ found that Bryant retained the residual functional capacity ("RFC") to perform unskilled occupations at the light exertional level.  However, he could not perform work that imposes close regimentation of production, undertake work in hazardous conditions, work around vehicles moving in close quarters, reach extreme postures, engage in prolonged walking or standing, engage in work demanding constant fine manipulation, or work in atmospheric concentrations of dust, smoke,

chemical fumes, or extreme temperature or humidity.  The ALJ also found that although Bryant is unable to perform past relevant work, there are jobs that exist in significant numbers in the national economy that Bryant can perform.

Following the ALJ's decision,  Bryant submitted additional evidence to the Appeals Council showing that Bryant was hospitalized December 18-24, 2010, for intractable diarrhea and dehydration.  At the same time, Bryant also submitted extensive pulmonary records, ranging in dates from 2006 to 2010.  The Appeals Council considered this additional evidence.  However, on April 10, 2012, the Appeals Council denied Bryant's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981.

## II.    FACTUAL BACKGROUND

Bryant was born on March 27, 1962, and was 44 years old on the alleged disability onset date of June 2, 2006.  Bryant has a limited education and is able to communicate in English.

### A.    Medical Background

The relevant medical evidence of record indicates that Bryant had Barrett's esophagus, obesity, COPD, degenerative spinal disc disease, and a right knee replacement.  A summary of the medical evidence appears in the text of the ALJ's decision.  However, the two main impairments at issue in this case are Bryant's pulmonary disorder and knee replacement surgery, which are further described below.

### 1.   Pulmonary Disorder

In June 2005, Bryant's longtime family physician, Dr. Paul H. Buller, referred Bryant to Dr. Yatin J. Patel, a pulmonologist, following a hospitalization for breathing issues after which Bryant found it increasingly difficult to breathe. (Tr. 428.) Bryant saw Dr. Patel for the first time on June 7, 2005. (Tr. 544–46.) Subsequently, Bryant followed up with Dr. Patel at least every two months through the date of the hearing. Dr. Patel primarily diagnosed Bryant with COPD and bronchitis. Frequently, Dr. Patel identified Bryant's symptoms as wheezing and shortness of breath, describing them as mild in severity and chronic in nature. Dr. Patel consistently prescribed Bryant a variety of allergy and breathing prescription medications to treat these symptoms. Dr. Patel also continually noted that Bryant overused his rescue inhaler, reportedly because he continuously felt that he could not breathe.

At the ALJ hearing, Bryant and his wife testified about the severity of his pulmonary disorders and symptoms. Bryant stated that after a series of hospitalizations, his pulmonologist told him that he was contributing to killing himself by working around saw dust and fumes. (Tr. 56.) Bryant explained that after he quit working, he was hospitalized less, but still suffered from constant wheezing and difficulty breathing, particularly when he exerted himself, breathed cold air, or inhaled fumes or dust. Bryant's wife discussed his sensitivity to the atmosphere and allergens. For example, she explained that when the weather is hot and humid or cold, or if the neighbors are mowing grass or burning something outside, she sees that Bryant cannot breathe. (Tr. 77.)

Bryant's wife testified that she has taken days off work when Bryant could not catch his breath with his inhaler and breathing machine, because he would break a sweat and turn pale when walking from the bedroom to the bathroom. (Tr. 75.) However, neither Bryant nor his wife testified to the frequency of these severe occurrences. Both Bryant and his wife testified that he could not

4

sit or stand for long periods at home because his breathing would worsen. Bryant's wife also testified that Bryant spent up to an hour and a half to catch his breath sufficiently to take a shower in the morning and that he has to rest when doing light household chores.

On January 11, 2010, Dr. Nauman Shahid admitted Bryant to Goshen General Hospital for continual shortness of breath with a significant history of COPD. Dr. Shahid coordinated with Dr. Patel to treat Bryant with IV antibiotics and steroids, plus bronchial therapy. (Tr. 612.) After seven days, Bryant, Dr. Patel, and Dr. Shahid agreed that Bryant could be discharged from the hospital with antibiotics and nebulizer treatments. (Tr. 591.) The discharge report stated that Bryant was not in respiratory distress, describing him as moving around without difficulty and having only a slight wheeze. The report also instructed Bryant to follow up with Dr. Patel.

Less than one month later on February 2, 2010, Dr. Patel made a pulmonary medical report in which he noted that Bryant suffered severe asthma attacks due to upper respiratory infections, allergens, exercise, irritants, and cold air. (Tr. 569.) Dr. Patel also noted that Bryant had COPD exacerbations, not asthma attacks, one to three times a month, leaving him incapacitated for an average of seven to ten days at a time. (Tr. 570.)

### 2.    Knee Replacement

Bryant's orthopedic surgeon reported that on March 8, 2010, he performed a total knee replacement on Bryant's right knee. (Tr. 703.) After the knee surgery, Bryant underwent physical therapy for two months. Initially, Bryant's physical therapist reported that he was walking with a cane. Within a few weeks, Bryant's physical therapist stated that he was walking both with and without a cane. (Tr. 686.) Then, on April 22, 2010, Bryant's physical therapist specifically noted that Bryant walked up one and down three flights of stairs without assistance. (Tr. 680.)

Bryant's physical therapist consistently noted that he was improving, but that he had difficulty walking and experienced swelling, pain, and stiffness in his knee.  On eighteen occasions, the physical therapist reported that Bryant had "not met" the goal of "ambulat[ing] in the community without [an] assistive device and full knee extension."  (Tr. 660, 663, 666, 669, 672, 675, 677, 679, 681, 683, 685, 687, 690, 692, 694, 696, 698, and 700.)  However, on May 24, 2010, Bryant walked into the clinic without limping.  (Tr. 649.)  In addition, Bryant's final two physical therapy reports dated May 14 and 24, 2010, indicate that he had "met" the goal of ambulating in the community without an assistive device and full knee extension.  (Tr. 650, 658.)

Less than two months later, on July 13, 2010, Bryant went for a follow up appointment with his orthopedic surgeon.  The surgeon reported that Bryant explained that he was no longer participating in physical therapy and had occasional aching pain in his knee that was aggravated by walking.  (Tr. 703.)  The surgeon also stated that Bryant reported that he was walking with a limp and had some soreness after being up on his knee all day.  In the report, Bryant's orthopedic surgeon noted that he examined Bryant and ordered him to resume his normal activity, as tolerated, until his knee regained full range of motion and strength.

**B.    Opinion by the ALJ**

At issue in this case are the ALJ's conclusions that Bryant's impairments did not meet or equal the listing for asthma or major dysfunction of a joint at Step Three of the disability analysis and that Dr. Patel's opinion no weight was not entitled to significant weight in making the RFC determination.  In his analysis of Listing 3.03 for asthma, the ALJ found that Bryant's occasional bronchitis and COPD exacerbations did not meet or equal the listing requirements. (Tr. 34.)  In support, the ALJ stated that Bryant neither met the listing for COPD, nor endured attacks severe enough to require treatment "in a hospital or emergency room at least once every

6

[two] months (or at least six times a year) with an evaluation period of at least [twelve] consecutive months" as required under the listing  (Tr. 34.)  In analyzing Listing 1.02, major dysfunction of a joint, regarding Bryant's knees, the ALJ found that Bryant did not have an extreme limitation of his  ability to walk because of his impairment as required under the listing. And in assessing Bryant's RFC, the ALJ noted that Dr. Patel was a treating source, but found that Dr. Patel's opinions were inconsistent with the record as a whole and gave them no significant weight.

## III. ANALYSIS

### A.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

When reviewing an ALJ's decision, a court considers the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the

7

claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v.Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).  "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence.  *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).  An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**B.     Disability Standard**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

8

expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).[1]

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits.  20 C.F.R. § 404.1520(a)(4).  The ALJ must consider steps whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has an impairment or combination of impairments that is severe; (3) whether the severe impairment or combination of impairments meets or equals a listed impairment in the appendix to the regulations; (4) the claimant's RFC leaves him unable to perform any past relevant work; (5) the claimant can perform other work in the national economy given the claimant's RFC, age, education, and experience.  20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).  If the ALJ can find that the claimant is disabled or not disabled at any step, the analysis ends.  20 C.F.R. § 404.1520(a)(4).

At steps four and five, the ALJ must use the claimant's RFC in reaching its decision.  The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations."  *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).  The RFC should be based on evidence in the record.  *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).  The

---

[1] The regulations governing the determination of DIB are found at 20 C.F.R. § 404.1501 *et. seq.*  The SSI regulations are set forth at 20 C.F.R. § 416.901 *et. seq.* and are identical to the DIB regulations.  For convenience, the Court will only cite the DIB regulations throughout the rest of this opinion.

claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

### C. Issues for Review

Bryant argues that the ALJ committed reversible error by (1) failing to properly evaluate Bryant under the listing for asthma, (2) failing to properly evaluate Bryant under the listing for major dysfunction of a joint, and (3) failing to give any weight to the opinion of Bryant's treating pulmonologist. In response, the Commissioner argues that substantial evidence and Seventh Circuit case law support the ALJ's decision in total. The Court will consider each argument in turn. However, the Court must first address Bryant's request for relief and use of evidence that was not before the ALJ.

> **1. The Court will address Bryant's request for remand under sentence four of 42 U.S.C. § 405(g) without considering the evidence Bryant submitted after the ALJ's decision to the Appeals Council, but denies Bryant's request for remand under sentence six of 42 U.S.C. § 405(g).**

Bryant requests relief under both sentence four and sentence six of 42 U.S.C. § 405(g). The United States Supreme Court has found that there are only two types of remand available in Social Security cases: sentence four remand or sentence six remand. *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under sentence four, the Court terminates the case, by either "affirming, modifying, or reversing," the Commissioner's decision. 42 U.S.C. § 405(g); *Curtis v. Shalala*, 12 F.3d 97, 101 (7th Cir.1993). Under sentence six, the Court retains jurisdiction and remands to the ALJ for further evidence-gathering and does not "rule in any way as to the correctness of the administrative determination." *Melkonyan*, 501 U.S. at 98. Therefore, the Court cannot grant both the sentence four and the sentence six remands that Bryant requests because the relief would be conflicting.

Additionally, Bryant takes a unique approach to requesting relief under both sentence four and sentence six.  In his opening brief, Bryant's arguments align with a request for relief under sentence four, but Bryant asks that the Court remand "with instructions to properly evaluate all of the evidence of record with respect to [Bryant's] physical impairments in a de novo hearing, and issue a new decision based in substantial evidence and proper legal standards." Doc. No. 26 at 23–24.  Here, Bryant appears to hint that he would like a sentence six remand, but Bryant did not actually request it until he filed his "Motion for Sentence Six Remand to Consider New and Material Evidence" contemporaneously with his reply brief.   In his motion, Bryant provided no authority for filing this additional motion, nor did he request permission from the Court to do so.[2]  However, because the Commissioner brought the sentence six remand to the Court's attention in his response brief, the Court will consider Bryant's sentence six argument.

Bryant's sentence six argument, however, fails.  The Court agrees with the Commissioner, who argued that Bryant's newly submitted evidence does not support a sentence six remand.  Sentence six of 42 U.S.C. § 405(g) allows the Court to remand a case to the ALJ for additional evidence gathering.  There are two situations where the Court may order a remand pursuant to sentence six: (1) where the Commissioner "requests a remand before answering the complaint," or (2) "where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Schaefer*, 509 U.S. 292, 297, n.2 (1993) (citing *Melkonyan*, 501 U.S. at 99–100, and n.2).  Here, the latter of the two situations is at issue.

---

[2] Plaintiff could have combined the content of his sentence six motion with his reply brief related to his initial opening brief and would have been within the page limit.  *See* N.D. Ind. L.R. 7-1 (e)(1) (2013) ("Reply briefs must not exceed 15 pages.").

Bryant argues that his newly submitted evidence is new, material, and was not submitted to the ALJ for good cause.  For sentence six purposes, "new" means evidence "not in existence or available to the claimant at the time of the administrative proceeding."  *Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir.1988) (quoting *Godsey v. Bowen*, 832 F.2d 443, 444 (7th Cir.1987)). "Material" means that there is a "reasonable probability" that the Commissioner would have reached a different conclusion had the evidence been considered.  *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (citing *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir.1993). However, the new evidence is only material if it "is relevant to the claimant's condition" during the time that the claimant's disability application was under the ALJ's review.  *Schmidt*, 395 F.3d at 742 (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir.1990)).

Here, Bryant's newly submitted evidence satisfies some, but not all the criteria necessary for a sentence six remand.  First, the evidence of Bryant's hospitalization in December 2010, was "new" because it was not available until after the ALJ's decision date of January 7, 2011. Second, Bryant had good cause for not presenting the evidence earlier because there were only fourteen days between his discharge and the ALJ's decision.  But third, this evidence is not "material" because Bryant was only treated for diarrhea and dehydration during the December 2010 hospitalization and those medical issues are not relevant to the pulmonary or joint problems that Bryant raised in his application for disability benefits.  Moreover, the hospital records do not show that his pulmonary or joint problems prevented him from working.

The remainder of the newly submitted evidence, upon which Bryant bases the majority of his arguments, consists mainly of pulmonary records from Dr. Patel.  While these records are "material" because they are relevant to Bryant's pulmonary disorder, the records span from 2006 to 2010 and were available at the time of the hearing.  Therefore, they do not qualify as "new."

12

Even if the Court were to take a generous view of "new," Bryant has not shown "good cause" for his failure to seek out and include Dr. Patel's records in the earlier record.  Bryant contends that his "good cause" was that he had to obtain new counsel due to the death of his former counsel.  However, the mere fact that Bryant had to obtain new counsel does not amount to good cause because "such a rule would amount to automatic permission to supplement records with new evidence after the ALJ issues a decision in the case, which would seriously undermine the regularity of the administrative process."  *Perkins*, 107 F.3d at 1296.  Therefore, because Bryant's newly submitted evidence from his December 2010 hospitalization and Dr. Patel do not constitute new and material evidence that was not submitted to the ALJ for good cause, Bryant is not entitled to a sentence six remand.  Consequently, the Court **DENIES** Bryant's motion for a sentence six remand. [Doc. No. 38].

As a secondary matter, the Commissioner argues that the Court should not consider any of Bryant's newly submitted evidence when reviewing the ALJ's decision under sentence four despite Bryant's request for just that.  Bryant contends that the newly submitted evidence should be considered because it was before the Appeals Council, even though he acknowledges that it was not before the ALJ.  A reviewing court may consider evidence that was not before the ALJ, but was submitted to the Appeals Council, only if the Appeals Council granted review and made a decision on the merits of the claim.  *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994); *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).  If the Appeals Council denied review, the reviewing court must ignore the evidence submitted to the Appeals Council and review the ALJ's decision and only the evidence that was before the ALJ.  *Luna*, 22 F.3d at 689; *Eads*, 983 F.2d at 817.  In this case, the Appeals Council received Bryant's newly

13

submitted evidence but did not grant review or make a decision on the merits. Accordingly, this Court must ignore Bryant's newly submitted evidence.

Having clarified that Bryant's request for review of the ALJ's decision is proper only under sentence four of 42 U.S.C. § 405(g) and that the Court cannot consider the new evidence that Bryant submitted to the Appeals Council, the Court now turns to the merits of Bryant's request for remand of the ALJ's decision. First, the Court will address whether substantial evidence supports the ALJ's decision that Bryant's severe pulmonary impairment did not meet or equal the listing for asthma. Second, the Court will address whether substantial evidence supports the ALJ's decision that Bryant's knee impairment did not meet or equal the listing for major dysfunction of a joint. And lastly, the Court will consider Bryant's argument that the ALJ failed to give sufficient weight to the medical opinion of his treating pulmonologist.

>    **2.     The ALJ's finding that Bryant's severe pulmonary impairment did not meet or equal the listing for asthma is supported by substantial evidence.**

Bryant argues that the ALJ erred at step three of the disability analysis by failing to properly evaluate his claim under the listing for asthma. Bryant further argues that had the ALJ applied the correct standard, he would have found that Bryant's severe pulmonary impairment met the listing for asthma. The Commissioner disagrees arguing that Bryant's impairment did not satisfy the criteria in the listings.

The listing for asthma is met either pursuant to 3.03A, which is evaluated under COPD, or pursuant to 3.03B, which is evaluated by the nature of the pulmonary attacks. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03. Listing 3.03B discusses both the nature and frequency of the attacks. Attacks are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or

14

prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." *Id.* at § 3.00C. The required frequency of these attacks is:

> . . . at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

*Id.* at § 3.03B. To meet the listing for asthma under 3.03B, the claimant must demonstrate that his impairments meet the requirements for both attacks and frequency. *Id.*

In the his decision, the ALJ found that Bryant's occasional bronchitis and exacerbations of his COPD did not meet the requirements for asthma under 3.03A or 3.03B. (Tr. 34.) However, Bryant objects to the ALJ's conclusion that his asthma does not meet or equal the listing for asthma under 3.03B. In support, Bryant points to the facts that he visited his doctor twice and was admitted to the hospital twice for asthma attacks during the relevant time period as evidence that he met the frequency requirement. However, frequency is only half of the requirement under 3.03B, and frequency of the attacks is not disputed.

The Commissioner contends that the ALJ's finding regarding the nature of Bryant's attacks was supported by substantial evidence in the record showing that Bryant had no history of "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." *Id.* at § 3.00C. Bryant argues that his newly submitted evidence rebuts this finding. However, as previously discussed, the Court will not consider any evidence that was not before the ALJ. As a result, the ALJ relied upon the record, which showed that Bryant had no history of attacks "so severe that they were treated in a hospital or emergency room at least once every [two] months (or at least

15

six times a year) with an evaluation period of at least [twelve] consecutive months." (Tr. 34.) Without such evidence, Bryant could not and did not establish that the nature of his attack met the 3.03B requirement even though he could establish the frequency element. Therefore, the ALJ's finding that Bryant did not meet the listing for asthma was supported by substantial evidence in the record before him and will not be disturbed.

> **3. The ALJ's finding that Bryant's severe knee impairment did not meet or equal the listing for major dysfunction of a joint is supported by substantial evidence.**

Bryant argues that the ALJ also erred at step three of the disability analysis by failing to properly evaluate his claim under the listing for major dysfunction of a joint. Bryant contends that his impairment does meet the listing for major dysfunction of a joint while the Commissioner claims that Bryant failed to carry his burden of proving that his knee impairment satisfied all the criteria set forth in the listing.

Bryant first argues that he met the listing for major dysfunction of a joint because his knee replacement resulted in the inability to ambulate effectively. Under the listing for major dysfunction of a joint, the claimant's impairment must involve one weight-bearing joint, such as a knee, that causes an "inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A. The inability to ambulate effectively is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* at § 1.00B2b(1). Whereas the ability to ambulate effectively is defined as "sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.* at § 1.00B2b(2). "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of [an assistive device], [and] the inability to walk a block at a reasonable pace on rough or uneven

16

surfaces . . . ." *Id.* However, the ability to "walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." *Id.*

Here, the ALJ concluded that Bryant did not meet the listing for major dysfunction of a joint because the record did not show Bryant's knee replacement caused an extreme limitation of his ability to walk. Bryant asserts that the ALJ failed to build a logical bridge from the medical evidence to his conclusion that Bryant was able to ambulate effectively. However, the ALJ cited to evidence that supported his conclusion. Specifically, the ALJ cited evidence that Bryant from the consultative physician in May 2008 that there were no limitations in Bryant's joint range of motion. The ALJ also noted that Bryant's knee replacement surgery in March 2010 had temporarily compromised Bryant's ability to walk as evidenced by comments from his orthopedic surgeon after the surgery. In particular, the ALJ referenced the surgeon's report four months post-surgery that Bryant still walked with a limp and some soreness. Therefore, the ALJ did build a logical bridge from the evidence to his conclusion that Bryant's level of impairment did not suggest an inability to ambulate effectively as required under listing 1.00B2b.

In addition, the Commissioner pointed to Bryant's physical therapy report, which showed that he walked independently in the home and community without an assistive device and that he walked without extreme limitations, even up and down stairs. (Tr. 680.) The ALJ did not cite to this compelling evidence that Bryant could ambulate effectively. However, the ALJ need not cite to all pertinent evidence in the record as long as the evidence he does cite is substantial enough to support his conclusion. In this case, the ALJ cited to substantial evidence regarding ambulation to support his conclusion that Bryant's knee impairment did not meet or equal the listing for major dysfunction of a joint.

Bryant then argues that the ALJ's step three analysis was erroneous because he did not

17

call a medical expert to assist in interpreting the evidence regarding Bryant's knee impairment even though it had worsened between the agency's RFC assessment in 2008 and his March 2010 knee surgery.  Bryant relies upon *Parker v. Astrue*, 597 F.3d 920, 924–25 (7th Cir. 2010) for the proposition that the ALJ should have evaluated Bryant's worsening knee impairment to determine whether his ailment was "presently disabling."  However, "worsening" impairments do not create a duty for the ALJ to develop the record by seeking additional medical opinions. An ALJ has discretion to decide whether or not to call a medical expert or recontact the claimant's medical sources and only needs to do so when the evidence received is inadequate to determine whether the claimant is disabled.  *Simila v. Astrue*, 573 F.3d 503, 516-17 (7th Cir. 2009); *Barnett*, 381 F.3d at 669 (discussing 20 C.F.R. § 404.1527).  Therefore, the court is required to give deference to the ALJ's judgment that there was sufficient medical evidence to make a disability determination.  *Luna*, 22 F.3d at 692.

Here, the ALJ acted within his discretion when he decided not to call a medical expert or recontact Bryant's doctors.  Bryant only argues that the ALJ should have obtained more evidence from a medical expert or updated evidence from his doctors, but does not dispute whether the ALJ had enough evidence to make a determination as to whether Bryant's knee impairment met the listing or to make the overall disability determination.  Moreover, the ALJ supported his listing conclusion with substantial evidence as discussed above.  Therefore, the Court defers to the ALJ's judgment that the evidence of record was adequate to reach his listing and disability conclusions and finds that the ALJ's failure to seek additional evidence was not reversible error.  *See Luna*, 22 F.3d at 693 (holding the ALJ's failure to seek additional evidence was not reversible error, even though all of a physicians' records were not before the ALJ).

Finally, Bryant argues that the ALJ impermissibly "played doctor" because he did  not

18

call a medical expert or recontact Bryant's doctors.  An ALJ "must not succumb to the temptation to play doctor and make their own independent medical findings."  *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).  In addition, "an ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion."  *Murphy*, 496 F.3d at 634 (citing *Barnett*, 381 F.3d at 669; *Rohan*, 98 F.3d at 970–71.  Here, the ALJ relied on the evidence in the record.  While the record may have been incomplete due to Bryant's failure to produce all his medical evidence, the record was used by the ALJ to support his findings that Bryant's impairments did not meet or equal a listing.  Moreover, the ALJ was not required to consult a medical expert or recontact Bryant's doctors.  Furthermore, the Court does not see how the ALJ could disregard medical evidence that he did not have.  The Court thus finds that the ALJ did not play doctor because he did not make his own independent medical findings by disregarding evidence in the record.

In conclusion, the Court upholds the ALJ's determination that Bryant's impairments did not meet or equal the listing for major dysfunction of a joint.  The ALJ built a logical bridge from the medical evidence to his conclusion that Bryant was able to ambulate effectively, citing medical evidence that supported the regulatory definition.  Additionally, the ALJ did not need to develop the record further because the evidence was adequate to determine whether Bryant was disabled.  Furthermore, failing to develop the record is not a foundation for "playing doctor" because the evidence that was in the record was not disregarded.  The ALJ's finding that Bryant did not meet the listing for major dysfunction of a joint was supported by substantial evidence in the record that was before the ALJ and stands.

### 4.    Treating Physician

Bryant argues that the ALJ erred by not giving sufficient weight to the opinion of Dr.

Patel, Bryant's treating pulmonologist, in determining his RFC.  Bryant argues that had the ALJ

weighed the required regulatory factors, Dr. Patel's opinion would have been given controlling

weight or great weight, causing the ALJ to reach a potentially different conclusion about whether

Bryant was disabled.   The Commissioner contends that the ALJ considered the opinion of Dr.

Patel, but reasonably found that it was entitled to no weight.

A treating source's opinion is entitled to controlling weight when it is well-supported by

objective medical findings and not inconsistent with other evidence.  20 C.F.R. § 404.1527(c)(2).

The ALJ must provide a sound explanation for refusing to give controlling weight to a treating

physician's opinion.  *Id.*; *see also Roddy*, 705 F.3d at 636–37 (citations omitted).  Such an

explanation is required so that the reviewing court can trace the path of the ALJ's reasoning.  *See*

*Cruz v. Astrue*, 746 F. Supp. 2d 978, 985 (N.D. Ind. 2010) (citations omitted).  Inconsistencies

may constitute good cause for an ALJ to deny controlling weight to a treating physician's

opinion.  *Clifford*, 227 F.3d at 871.  However, the ALJ must adequately articulate his reasoning

for discounting a treating physician's opinion.  *Id.*  Moreover, cherry-picking a single

inconsistency out of the treatment records is not sufficient evidence to support an ALJ's rejection

of a treating source opinion and ultimately a denial of disability benefits.  *See Scott v. Astrue*,

647 F.3d 734, 740 (7th Cir. 2011).

In addition, the ALJ may not assign a weight without considering the following factors

identified in the Social Security regulations:  (1) the length, nature, and extent of the physician's

treatment relationship with the claimant; (2) whether the physician's opinions were sufficiently

supported; (3) how consistent the opinion is with the record as a whole; (4) whether the

physician specializes in the medical conditions at issue; and (5) other relevant factors that tend to

support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder*,

20

529 F.3d at 415; *Clifford*, 227 F.3d at 871. "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the court] must allow that decision to stand . . . ." *Elder*, 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Alternatively, remand may be appropriate if the ALJ discounts a treating physician's opinion without considering these regulatory factors. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

In the case at hand, the ALJ identified Dr. Patel as Bryant's treating pulmonologist, but refused to give his opinion any significant weight. The ALJ began by properly noting that Dr. Patel's three statements that Bryant was "unable to work," made in March 2008, September 2009, and February 2010, could not be given controlling weight or special significance because Bryant's ability to work is a decision reserved to the Commissioner. *See* SSR 96-5p. However, the ALJ noted two inconsistencies between Dr. Patel's opinion and his own treatment records. First, the ALJ compared Dr. Patel's description of Bryant's COPD as "constantly severe and debilitating" with his own chart notes and evaluations which consistently stated that Bryant's symptoms were "mild or moderate" except when he faced exacerbations. (Tr. 40.) Second, the ALJ also found that Dr. Patel "listed symptoms which go far beyond allegations made by [Bryant], let alone shown in the doctor's medical records." (Tr. 40.) As an example, the ALJ noted that Dr. Patel's Pulmonary Medical Source Statement prepared on February 2, 2010, as part of Bryant's disability application inexplicably stated that Bryant suffers from 1–3 COPD exacerbations per month, each incapacitating him for 7–10 days. (Tr. 40, 570.)

While these inconsistencies may be consequential, the ALJ has not provided enough detail to support his conclusion that Dr. Patel's statements are inconsistent with the record as a whole. As a result, the Court cannot effectively trace the path of the ALJ's reasoning. In addition, the ALJ does not clearly show in his opinion that he considered all of the required

21

regulatory factors.  The ALJ did note that Dr. Patel was treating pulmonologist.  However, the ALJ's opinion does not reflect the length of Dr. Patel's treating relationship with Bryant, which lasted at least from June 2005 through February 2010.  In addition, the ALJ makes no mention of the frequency of Bryant's visits to Dr. Patel for treatment and fails to address how Bryant's symptoms, updated in each treatment record, are inconsistent with Patel's conclusions.  And as already discussed, the ALJ's attempt to address the consistency of Dr. Patel's opinions with the record as a whole were also insufficient.

Therefore, because the ALJ did not adequately articulate his reasoning for refusing to give Dr. Patel's opinion controlling weight and did not demonstrate that he had considered all the required regulatory factors in doing so, the ALJ's decision denying disability benefits to Bryant is not supported by substantial evidence.  Accordingly, this case is remanded so that the ALJ can reevaluate whether Dr. Patel's opinions about Bryant's disability are entitled to controlling weight.  If on remand, the ALJ still decides that controlling weight should not be given to Dr. Patel's opinion, the ALJ must provide a sound explanation of the decision.  *See Roddy*, 705 F.3d at 636–37.

## IV.    CONCLUSION

The additional evidence that Bryant submitted to the Appeals Council is not new and material and there was not good cause for Bryant's failure to submit the evidence to the ALJ before his decision was issued.  Therefore, the Court **DENIES** Bryant's motion for sentence six remand. [Doc. No. 38].  In addition, the Court cannot consider Bryant's additional evidence in its sentence four analysis either because the Appeals Council did not grant review or reach a decision on the merits of Bryant's disability claim.

As to the merits of Bryant's request for a sentence four remand, the ALJ's determination

22

that Bryant's impairments did not meet or equal the listings for asthma and major dysfunction of a joint is supported by substantial evidence. However, the ALJ failed to provide a sound explanation for not giving Dr. Patel's treating source opinion controlling weight and failed to address all the required regulatory factors in reaching that conclusion.  Therefore, Bryant's request for remand is **GRANTED** [Doc. No. 26].  This case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S .C. § 405(g). The clerk is instructed to term the case.

> **SO ORDERED.**

Date this 20th day of December, 2013.

s/Christopher A. Nuechterlein\
Christopher A. Nuechterlein\
United States Magistrate Judge
